# EXHIBIT A-1
# PLAINTIFF'S ORIGINAL PETITION

13 CITS-ESERVE
2 CITS SOS-ESERVE

Case 3:23-cv-01958-X    Document 1-4    Filed 08/31/23    Page 2 of 27    PageID 16

FILED
8/21/2023 12:27 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Christi Underwood DEPUTY

DC-23-12483

CAUSE NO. _____

| | | |
|---|---|---|
| STEVE GENOVESE, | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | 95th |
| LIVE NATION ENTERTAINMENT, INC., | § | |
| ET AL | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW **STEVE GENOVESE ("PLAINTIFF")** and files this Original Petition against **LIVE NATION ENTERTAINMENT, INC.; LIVE NATION WORLDWIDE, INC.; LIVE NATION MARKETING, INC.; TICKETMASTER ENTERTAINMENT, INC. (collectively, the "LIVE NATION DEFENDANTS"); DAVID WEISE & ASSOCIATES, INC., a division of NKSFB, LLC; C3 PRESENTS, LLC.; I.D. PRODUCTION SERVICES, LLC; CASEY CARTER; JOSEPH DAVIES BAIRD; COWBOYS STADIUM, LP d/b/a AT&T Stadium; COWBOYS STADIUM, GP, LLC; BLUE & SILVER, INC.;** and **BLUE STAR OPERATIONS SERVICES, LLC** (hereafter, collectively "**DEFENDANTS**") and would show unto the Court the following:

## DISCOVERY CONTROL PLAN

1.     Plaintiff intends to conduct discovery under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

## CLAIMS FOR RELIEF

2.     Pursuant to TEX. R. CIV. P. 47, Plaintiff seeks monetary relief in an amount in excess of the minimum amounts stated in TEX. R. CIV. P 47(c)(4), as well as all other and further

relief that Plaintiff shows himself to be entitled and that justice requires as Plaintiff may be entitled as a result of the accident and occurrence made the basis of this lawsuit.

## PARTIES

3.      The Plaintiff, **STEVE GENOVESE** is a resident of the State of Arizona.

4.      Defendant, **DAVID WEISE & ASSOCIATES, LLC, f/k/a DAVID WEISE AND ASSOCIATES, INC. ("Weise"),** is a California limited liability company with its headquarters located at 15821 Ventura Blvd., Suite 370, Encino, CA 91436, doing business in Texas under the assumed, fictitious and/or false name of **"DAVID WEISS AND ASSOCIATES"**. Said Defendant has falsely claimed to be a Delaware corporation. Said Defendant is a division of Defendant, **NKSFB, LLC**. Said Defendant is an agent and promoter of the musical group known as The Weeknd who was scheduled to perform a concert at AT&T stadium on August 14, 2022. Said Defendant is an agent and/or subcontractor of the Promoter, LIVE NATION DEFENDANTS.

Said Defendant does not maintain a registered agent for service in the State of Texas and thus may be served with process pursuant to TEX. CIV. PRAC. & REM. CODE §17.026, 17.044-.045 via substituted service on the Secretary of the State of Texas located at P. O. Box 12079, Austin, TX 78711-2079. Said Defendant may also be served by serving David Weise or other person in charge or the manager on duty at the time of service at its headquarters located at 1582 Ventura Blvd., Ste. 370, Encino, CA 91436.

5.      Defendant, **NKSFB, LLC ("NKSFB")** is a Delaware limited liability company who does business in the State of Texas, independently and/or by and through its division **DAVID WEISE & ASSOCIATES, LLC** and its partner David Weise. NKSFB's headquarters are located at 10960 Wilshire Blvd, 5th Floor, Los Angeles, CA 90024. NKSFB touts itself as the

largest business management firm in the country with eight offices in the United States and United Kingdom.  NKSFB, LLC does not maintain a registered agent for service of process listed with the Texas Secretary of State.  NKSFB may be served pursuant to TEX. CIV. PRAC. & REM. CODE §17.026, §17.044-.045 via substituted service on the Secretary of the State of Texas located at P. O. Box 12079, Austin, TX 78711-2079.

NKSFB may also be served, pursuant to TEX. CIV. PRAC. & REM. CODE § 17.043 by serving Mickey Segal or other person in charge or manager on duty at the time of service, of its business located at 10960 Wilshire Blvd, 5th Floor, Los Angeles, CA 90024.

6.      Defendant, **LIVE NATION ENTERTAINMENT, INC.,** independently and doing business as **LIVE NATION CONCERTS,** is a Delaware corporation registered to do business in the State of Texas.  Said Defendant considers itself to be the world's largest producer of live entertainment.  It is an American global entertainment company founded in 2010 following the merger with Ticketmaster.  The company promotes, operates, manages, ticket sales for live entertainment in the U.S. and internationally.  Live Nation Entertainment, Inc. may be served with process through its registered agent, Corporate Creations Network, Inc., at 5444 Westheimer #1000, Houston, Texas 77056.

7.      Defendant, **LIVE NATION WORLDWIDE, INC.** is a corporation registered to conduct business in Texas and conducts a substantial amount of business in Texas on a continuous and systematic basis from its headquarters and principal place of business in Houston, Texas. Live Nation Worldwide is citizen of Texas. Live Nation Worldwide, Inc. may be served with process through its registered agent, Corporate Creations Network, Inc., at 5444 Westheimer #1000, Houston, Texas 77056.

8.      Defendant, **LIVE NATION MARKETING, INC. ("Live Nation Marketing")** is a corporation registered to conduct business in Texas and conducts a substantial amount of business in Texas on a continuous and systematic basis from its headquarters and principal place of business in Houston, Texas. Live Nation Marketing is a citizen of Texas. Live Nation Marketing, Inc., may be served with process through its registered agent, Corporate Creations Network, Inc., at 5444 Westheimer #1000, Houston, Texas 77056.

9.      Defendant, **C3 PRESENTS, LLC ("C3"),** is an Austin, Texas, limited liability company doing business in the State of Texas as "one of the largest concert promoters in the U.S., promoting concerts. . . across the country." C3's managing member is LIVE NATION WORLDWIDE, INC. Said Defendant is an agent, subcontractor and subsidiary of the Promoter, the LIVE NATION DEFENDANTS. C3 may be served with process by serving its registered agent: Corporate Creations Network, Inc., 5444 Westheimer #1000, Houston, Texas 77056.

10.     Defendant, **I.D. PRODUCTION SERVICES, LLC ("ID Production")**, is a Texas limited liability company doing business in the State of Texas as a concert and production services company and had its principal place of business in Dallas County, Texas at the time this cause of action accrued. Said Defendant is an agent, subcontractor and subsidiary of the Promoter, the LIVE NATION DEFENDANTS. Said Defendant may be served with process by serving its registered agent: Linda B. Moore, 14644 Waterview Circle, Addison, Dallas County, Texas 75001-7922.

11.     Defendant, **CASEY CARTER ("Carter")**, is an individual and resident of the State of Texas who worked for Defendant, **C3 PRESENTS LLC**, at the time and place of the occurrence and may be served with process at 98 San Jacinto Blvd., Ste. 400, Austin, Texas 78701.

12.     Defendant, **JOSEPH DAVIES BAIRD ("Baird")** is an individual who resided in Dallas County, Texas, at the time off the accrual of this cause of action. Baird is an officer, director, and managing member of ID Productions and may be served with process at 6778 E. Northwest Highway, Dallas, Texas 75231.[1]

13.     Defendant, **COWBOYS STADIUM, LP**, d/b/a AT&T Stadium is a Texas Domestic Limited Partnership which is registered to conduct business in the State of Texas and has its principal place of business at One AT&T Way, Arlington, Tarrant County, Texas 76011. Defendant Cowboys Stadium, LP does business as AT&T Stadium and as the long-term tenant of the premises, contractually agreed with the landlord that Defendant Cowboys Stadium, LP has full control of the operation, leasing, and management of the AT&T Stadium complex. Defendant Cowboys Stadium, LP may be served with process on its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

14.     Defendant **COWBOYS STADIUM, GP, LLC** is the general partner of Defendant Cowboys Stadium, LP and is a Texas Domestic Limited Liability Company which is registered to conduct business in the State of Texas and has its principal place of business at One Cowboys Parkway, Irving, Texas 75063 in Dallas County, Texas. Defendant Cowboys Stadium GP, LLC may be served with process on its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

15.     Defendant **BLUE & SILVER, INC.** is the managing member of Defendant Cowboys Stadium, LP and a Texas Corporation which is registered to conduct business in the State of Texan and has its principal place of business at One Cowboys Parkway, Irving, Texas

---

[1] Defendants Weise; NKSFB; C3; ID Productions; Carter; and Baird are sometimes collectively referred to herein as the "**Promoter's Subcontractor Defendants.**"

75063 in Dallas County, Texas. Defendant Blue & Silver, Inc. may be served with process on its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

16.     Defendant **BLUE STAR OPERATIONS SERVICES, LLC** is a Texas for-profit corporation and is registered to do business in the state of Texas. Defendant Blue Star Operations Services, LLC may be served with process by serving its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.[2]

## JURIDICATION AND VENUE IS PROPER IN DALLAS COUNTY

17.     Venue is proper in Dallas County, Texas, pursuant to TEX. CIV. PRAC. & REM. CODE §§15.002(a)(2) and (3); 15.005; and 15.006 because one or more of the Defendants were residents of and/or had its principal place of business in Dallas County, Texas, at the time this cause of action accrued. Because venue in Dallas County is proper as to at least one Defendant, venue in Dallas County is proper as to all Defendants pursuant to TEX. CIV. PRAC. & REM. CODE § 15.005.

18.     This Court has jurisdiction over this matter because the amount in controversy is within this Court's jurisdictional limit. Plaintiff would show that Federal Removal Jurisdiction does not exist because one or more of the Defendants are residents of the State of Texas.

## FACTUAL BACKGROUND

Musical Concerts are Big Business

19.     Americans love their music, in particular live music, and there is no doubt live music festivals and concerts are their priority.  Each year more than half the US population attends live music events,[3] spending billions of dollars.  This is the LIVE NATION business.  In the third

---

[2] Defendants Cowboys Stadium, LP; Cowboys Stadium, GP, LLC; Blue & Silver, Inc.; and Blue Star Operations Services, LLC are sometimes collectively referred to herein as the "**AT&T Stadium Defendants.**"
[3] Nielson Music 2018 360 report.

quarter of 2022, LIVE NATION continued to set records for concert ticket sales with revenues for that quarter alone over $6.2 billion.[4]  In addition to record sales, concert attendance records were set with over 44 million persons attending 11,000 events.[5]

20.     In January 2010, LIVE NATION, INC. merged with TICKETMASTER ENTERTAINMENT, INC. with the name of the post-merger entity being LIVE NATION ENTERTAINMENT, INC.[6] LIVE NATION ENTERTAINMENT, INC., now controls over 70% of the ticketing and live event venues market.[7]  Under the name, TICKETMASTER, Ticketmaster sells tickets to customers that include "hidden" or "junk fees" for things like "staffing," "security," "facility fees," "emergency medical services," "parking," etc. costing concert goers millions of dollars in added costs for tickets.[8]

21.     Along with the economic privileges and benefits of hosting hundreds of thousands of ticket buying, concert-goers who attend each of the LIVE NATION promoted live concert events, comes the responsibility and duty of protecting the health and safety of those individuals, the staff and workers who perform inherently dangerous work in the construction of the concert facilities and infrastructure on an expedited basis, the entertainers and performers, and the public in general who are in close proximity to the concert event.

---

[4] Billboard Bulletin, "Live Nation Turns in Record Quarter as Touring Business Booms", Glenn Peoples, November 2, 2022.
[5] *Id*. Live Nations CEO Michael Rapino states:  "Fans around the world continue prioritizing their spend on live events particularly concerts. . . Despite varying economic headwinds including inflation, we have not seen any pullback on demand as on-sales, on-site spending. . . and all other metrics continue showing strong year-on-year growth."
[6] Sec.gov/Archives/edgar/data/1335258/000119312510012287/dex999.htm.
[7] cnbc.com/2023/01/25/the-live-nation-and-ticketmaster-monopoly-of-live-entertainment.html.
[8] Live Nation, who operates its ticket sales under its Ticketmaster name is notorious for charging hidden fees in each ticket that it sells to concert goers that are often as high as 20% or more of the ticket price and include such hidden fees as security, staffing and others.

22.      Because of the magnitude and gravity of the potential risks and foreseeable harm associated with the multitudes that gather at these mass, outdoor, live concert events, in November 2021 the State of Texas, by and through Governor Greg Abbott, formed the Texas Task Force on Concert Safety, saying "Live music is a source of joy, entertainment and community for so many Texans and the last thing that concert goers should have to worry about is their safety and security. To ensure that the tragedy that occurred at the Astroworld Festival never happens again, I am forming the Texas Task Force on Concert Safety. From crowd control strategies and security measures to addressing controlled substances, the task force will develop meaningful solution that will keep Texans safe while maximizing the joy of live music events."[9]

Concert Safety Solutions Begin Long Before the Gates Open

23.      Long before a mass, live-concert event takes place, concert promoters and their agents and contractors are required to comply with the safety permitting processes through various state, county and municipal permitting agencies to ensure not only the events taking place on the day of the concert are safe, but also the activities and work leading up to it such as the construction of the concert stage and other enormous facilities. The permitting process is required, inter alia, by Texas Health & Safety Code §751 et, seq. The Mass Gathering Permit and the Outdoor Music Festival Permit required by Texas Occupation Code §2104. et seq. were enacted and required out of the need for heightened safety and security of all those involved in the concert event.

24.      Before the concert gates open, concert staff and workers are scrambling, working long hours to construct the stage, lighting, and other facilities in advance of the concert event.

---

[9] Certain Defendants herein were named as participants in this task force.

This pre-concert work is often done in a matter of days and even hours before opening, where workers are required to put in the work that it takes to allow the show to go forward as planned for the ticket buying concert goers – after all, "the show must go on." Even though the work done by the construction crews must be done on an expedited basis, there is no room for error or mistake when the lives and well-being of so many are involved. Thus, the promoter, as the captain of the ship and one in charge, is responsible for coordinating this pre-concert and post-concert work so that it is done not only expeditiously and efficiently, but also safely and correctly.

25.     Defendants are the premises owners, operators, promoters, safety and/or security contractors, directors, managers, and organizers of "The Weeknd" concert at AT&T Stadium which took place on August 14, 2022. Live Nation is a multi-billion-dollar company with international operations. AT&T Stadium Defendants operate, and control AT&T Stadium and grosses millions of dollars a year in hosting events such as concerts at AT&T Stadium. Defendants had the knowledge, ability, and duty to prevent the severe and life-altering injuries inflicted on Plaintiff. Instead, Defendants placed more value on their own financial gain than on the safety of the workers who helped put on The Weeknd concert that took place on August 9, 2022 at AT&T Stadium.

## THE INCIDENT

26.     On August 9, 2022, Plaintiff was working as a stagehand for **STAGECO** (a Texas corporation), who contracted with the Promoter, and Promoter Subcontractor Defendants, to construct the stage and supporting equipment and infrastructure for the upcoming concert by the musical group "The Weeknd" which was scheduled to take place at AT&T Stadium in Arlington, Texas, on August 14, 2022.

27. On April 6, 2022, in advance of the concert, **STAGECO** contracted with Defendant Weise, on behalf of and as an agent and/or subcontractor of the Promoter and/or the Promoter's Subcontractor Defendants (the **"Weise Contract"**). Pursuant to said contract, Promoter and the Promoter Subcontractor Defendants (referred to as **"Client"** in said contract) were to provide the following:

- Client shall provide, or cause a person, firm or corporation to provide, Stageco with a reasonable number of stagehands at the Event Location to assist Stageco in the construction and dismantling of the System. Such stagehands shall be employees of Client or such person, firm, or corporation, engaged by the Client under a contract for services or assigned to work for the Client pursuant to an agreement between the Client and a third party. . .

- Client shall provide appropriate credentials to Stageco's staff and personnel to insure that such persons have a continuing ability to inspect the System and to enable Stageco's personnel to perform their obligations hereunder.

- Client agrees to provide security personnel for the protection of the equipment while the equipment is "in use". The equipment and its separate parts shall be deemed to be "in use" from the time it or its separate parts shall be unloaded from the vehicles in which the equipment shall be transported to the site for the production, until such time as the equipment shall be reloaded onto such vehicles for transport. At all times except when the equipment is "in use", the Equipment will be the sole responsibility of the Client and/or any carrier or other transporter transporting the equipment. Client shall maintain property insurance coverage for the equipment at all times during the production.

- Client shall provide and pay for at least one emergency medical technician to be on-site throughout the construction and dismantle of the system.

- Client shall comply with the terms and conditions and perform all of the obligations set forth in the Staging Rider ("Rider") attached hereto.

- Client agrees to defend, indemnify and save and hold harmless of and from any and all claims, demands actions, causes of actions, costs, losses, liabilities and damages (Including reasonable attorneys' fees and cost of defense) resulting from Injury or death of any person or damage to or loss of any property and arising out of or attributable to (I) the actions, activities, conduct or omissions of any of Client's Group or (II) the use of any product or equipment supplied by any of Client's Group.

- Client shall provide and pay for, at its own expense, the services of fifty-nine (59) strong, able-bodied people who will assist Stageco during the unloading, construction, dismantling and subsequent removal of Stageco's System from the Event Location.

- The workforce described above shall be for the sole use of Stageco and shall not be designated any other tasks by Client for the Term of this Agreement.

- <u>FORKLIFTS AND MATERIAL HANDLING</u>: Client shall provide and pay for, at its own expense, a total of eight (8) forklifts that are totally suitable for the Event Location access and terrain and are functional in every manner. They shall have experienced and properly licensed operators to operate them at all times at the Event Location.

- The equipment described above shall be for the sole use of Stageco and shall not be designated for any other tasks by Client. All machinery shall be available and in full working order at all times from Stageco's arrival at the Event Location until Departure. . .

28.    Based upon information and belief, Defendant **CASEY CARTER** and **JOSEPH DAVIES BAIRD**, individually and/or d/b/a **C3** and **I.D. PRODUCTION SERVICES, LLC**, acting as the agents, principles, partners, coventurers, employees and/or subcontractors of the Live Nation Defendants, and for Defendant Weise, were present and working at the scene of the occurrence before and at the time Plaintiff was injured. Said Defendants were acting in their capacities as the Promoters' and/or Promoters' Subcontractors, agents and/or representatives, supervising and overseeing the truck and equipment unloading process, forklifts, as well as the forklift operations and the set-up process. Although it was the Promoter Defendants' and Promoter Subcontractor Defendants' responsibility to provide an adequate number of able-bodied staff and stagehands, properly functioning forklifts, and an adequate number of properly trained and certified forklift operators to operate the forklifts to be used in the unloading, and construction process, said the Promoter Defendants and Promoter Subcontractor Defendants did not provide

them as required. This, despite hidden fees charged by Defendants for undisclosed things like staffing, security, parking, construction, emergency management personnel, etc. In addition, although it was said Defendants' responsibility to provide emergency medical services and trained personnel, including an ambulance and emergency technician, said Defendants failed to provide same as required.

29.     Due to the Promoter Defendants' and Promoter Subcontractor Defendants' failure to provide the required forklifts and properly trained forklift operators and staff pursuant to the terms of the Weise Contract, which were necessary for the safety of workers like Plaintiff, other individuals were forced to man and operate the forklifts in order to timely do the work necessary to construct the stage for the upcoming concert. Said failures, as well as others, resulted in an increased risk of harm to workers present at the site, including Plaintiff.

30.     On August 9, 2022, Plaintiff and other workers were engaged in the inherently dangerous activities and ultra hazardous work of constructing the stage for the upcoming concert. While marking the floor for the stage dimensions, Plaintiff was run over by a forklift which was being operated by another worker on site.  Based upon information and belief, said worker was operating the forklift after the Promoter Defendants and/or Promoter Subcontractor's Defendants' agents, Defendant Casey Carter of CP3 and/or David Baird of I.D. Production Services, gave the "go-ahead" to commence work without the necessary number of stagehands, staff, forklifts, forklift operators and EMS personnel being present. The forklift driver who ran over Plaintiff was operating a forklift because Defendants failed and refused to provide qualified forklift drivers and adequate staff as agreed in their respective contracts. As a result, Plaintiff suffered severe, excruciatingly painful and permanently disabling injuries to his leg. The flesh and muscle were torn away from Plaintiff's leg and were detached from the bones.

31.     Because the Promotor Defendants and Promoter Subcontractor Defendants failed to secure the services of an ambulance or properly trained and certified EMS personnel, as required, not only under the reasonableness standard of the common law, but also under the contract, Plaintiff's medical care and transport to the hospital was significantly delayed – further exacerbating his severe and life-altering injuries. Plaintiff spent more than a month in the hospital where he underwent numerous surgeries to save his leg, which is now horrifically and permanently disfigured and impaired. Plaintiff is now severely crippled for the rest of his life.

## PLAINTIFF'S CLAIMS AND CAUSES OF ACTION

## COUNT ONE: NEGLIGENCE

32.     Plaintiff incorporates all foregoing paragraphs by reference as if fully set forth herein.

33.     Plaintiff asserts his claims against Defendants based upon Defendants' negligence. Plaintiff would show that based upon the Weise Contract and/or its other contracts and/or the common law, Defendants owned, operated, promoted, controlled, directed, and managed the site where Plaintiff was severely injured. As such, Defendants had a duty to Plaintiff not to harm him and that each Defendant has breached said duty which is a proximate cause of Plaintiff's injuries and damages set forth herein. Additionally, in light of the risks of harm present on or around August 9, 2022 at the AT&T Stadium associated with the stage and facilities construction, the foreseeability of such risks of harm, and the likelihood of bodily injury to persons on site, including Plaintiff—which weighed against the social utility of Defendants' actions and inactions and the minimal burden to Defendants in guarding against such foreseeable and unreasonable risks of harm (*i.e.* the risk-utility test), Defendants owed Plaintiff a legal duty to exercise reasonable and ordinary care to mitigate against the risks of foreseeable and unreasonable harm.

Defendants also had a duty to exercise reasonable care to control the conduct of third persons coming onto the site and prevent them from causing harm to others, including Plaintiff. Defendants also owed Plaintiff a duty to take reasonable steps to mitigate the unreasonable risk of harm to invitees, including Plaintiff, from the negligent acts of third parties.

34.     Defendants had the right, ability, and responsibility to control the conduct occurring on site, knew or had reason to know of the necessity of taking appropriate action to prevent foreseeable harm to those on site, had the opportunity to prevent such foreseeable harm, yet failed to do so.

35.     As further alleged herein, Plaintiff would show that Defendants' acts, omissions and/or wrongs complained of herein breached their duties owed to Plaintiff and amounts to negligence under Texas law.  Each of the Defendants, acting independently or in combination with the other Defendants, were negligent and breached their respective duties owed to Plaintiff by, for example, and without limitation:

1)  Failing to provide a safe environment for workers, including Plaintiff;

2)  Failing to provide adequate forklifts and/or forklift operators as required under the Weise Contract and/or other contracts;

3)  Failing to provide an adequate crew and staff to do the stage set-up work in a safe and workman like manner;

4)  Failing to perform the work in a safe and workmanlike manner;

5)  Failing to maintain, follow, and enforce reasonable and necessary policies and procedures for a safe work environment;

6)  Failing to hire and provide competent employees and/or agents to perform and inspect the work on site;

7) Failing to provide proper and adequate training and supervision of the crew on site;

8) Failing to provide an ambulance or properly trained and certified EMS personnel;

9) Failing to properly and/or timely inspect the premises and conditions before allowing commencement of the work;

10) Failing to provide Plaintiff and other workers adequate warnings and instructions with respect to the work, equipment and crew involved;

11) Allowing and/or requiring work to commence without adequate inspection, permit(s), safety and security, EMS, staff, crew and/or equipment present;

12) Violating applicable, local, state and federal laws and/or regulations;

13) Failing to properly supervise and/or oversee the forklift work being conducted at the time and place of the occurrence; and

14) Negligent scheduling of work.

36.     As a direct, proximate, and foreseeable result of Defendants' breaches of their legal duties, Plaintiff sustained severe and life-altering injuries. But for said breaches, Plaintiff would not have been severely injured. Defendants' breaches, acts, and omissions were a substantial factor and proximate cause of Plaintiff's life-altering injuries and damages set forth herein.

37.     Plaintiff further alleges that, at all material times, Defendants were agents, servants, employees, partners, authorized representatives and/or joint venturers of one another and the acts of each Defendant were within the course and scope of the agency, employment, partnership, and/or joint venture such that Defendants are jointly and severally liable for the damages they collectively caused Plaintiff.

38.     The various Defendants who owned, operated, managed, and controlled AT&T Stadium were engaged in a joint enterprise or joint venture to operate and/or maintain AT&T Stadium and each had the actual and/or contractual right and/or duty to control the business operations, policies, procedures, and activities of such premises, including in particular safety at the stadium. Additionally and/or alternatively, they comprised and constituted a single business enterprise in such regard.

39.     Additionally, and/or alternatively, they were managers, vice principals, agents, mere tools, instrumentalities, departments, and/or alter egos of each other or of one another regarding the operations of and at AT&T Stadium. They are vicariously and/or jointly and/or severally liable for the conduct of one another in such regard.

40.     Additionally and/or alternatively, at all material times, the persons who committed acts and/or omissions of negligence and/or other wrongful conduct as alleged herein were the agents, servants, and/or employees of some of the Defendants and were acting within the course and scope of their authority as such agents, servants and/or employees. Accordingly, the Defendants are liable to Plaintiffs under the doctrine of Respondeat Superior.

41.     Additionally and/or alternatively, at all material times, the persons who committed acts and/or omissions of negligence and/or other wrongful conduct alleged herein were contractors of some Defendants, subject to such Defendants' control as to the relevant details of their work, and Defendants were negligent in exercising such control, such that Defendants are responsible for the damages caused by their conduct, negligence, and breaches herein.

42.     Whenever alleged herein that a defendant or defendants did or failed to do any act or thing, it is meant that such Defendants' officers, agents, servants, employees and/or representatives did or failed to do such act or thing and that at the time such conduct occurred, it

occurred with the authorization and/or ratification of such Defendants and/or was done in the normal and routine and course and scope of employment or agency of such Defendants' officers, agents, servants, employees and representatives.

43.     Pleading in the alternative and without waiving the foregoing, Plaintiff would show that the LIVE NATION DEFENDANTS, WEISS, NKSFB and their agents and subcontractors, in addition to their common law and contractual duties of reasonable and ordinary care, as the concert promoter, and captain of the ship, acting independently and/or by and through their agents and subcontractors, had a non-delegable duty to use a high degree of care to Plaintiff so as not to injure him as occurred.  In particular, Plaintiff would show that the LIVE NATION DEFENDANTS, acting by and through their agents and contractors, had the following non-delegable duties to Plaintiff, without limitation:

a.     The duty to perform its contracts with care, skill, reasonable expedience, faithfulness;

b.     The duty to provide rules and regulations for it, its agents and subcontractors to follow for safety of the public, staff and workers;

c.     The duty to furnish reasonably safe machinery and manpower in order to allow its agents and subcontractors to do the work necessary;

d.     The duty to avoid harm to the public, workers, and other third parties at its concert venues due to the negligence of the contractors and subcontractors who perform inherently dangerous work;

e.     The duty to provide for precautions against dangers involved in work entrusted to its agents and/or contractors;

f.      The duty to provide special precautions in work that is dangerous, where such work is dangerous without such special precautions; and

g.      Such other and further non-delegable duties as will be shown at trial.

44.     Plaintiff would further show that the LIVE NATION DEFENDANTS, acting independently and/or by and through their agents, apparent agents, contractors, and/or subcontractors, breached said non-delegable duties and such amounts to negligence and is a proximate cause of Plaintiff's injuries and damages set forth herein.

## COUNT TWO: NEGLIGENCE IN PERFORMING DUTIES ASSUMED BY CONTRACT

45.     Plaintiff incorporates all foregoing paragraphs by reference as if fully set forth herein.

46.     Pleading in the alternative and without waiving the foregoing, Plaintiff would show that the Live Nation Defendants, acting by and through their agents, principles, partners, co-venturers, subcontractors and/or employees, including but not limited to the Weise Defendants, NKSFP, C3, I.D. Production, Carter and Baird, were negligent in breaching each of their respective duties and obligations under their respective contracts with one another and/or StageCo. Plaintiff would show that accompanying each of their respective contracts including but not limited to the contract between Weise and StageCo, is a common-law duty to perform each of the promises, covenants and agreements in said contracts with reasonable care, skill, reasonable expedience and faithfulness, and that each Defendant breached its agreements to provide an adequate staff, security, able bodied laborers, certified forklift operators, forklift machines, emergency technicians and vehicles, etc., to safely do the work involved at the time and place of the occurrence, and said breaches amount to negligence under the law. Said negligence is a proximate cause of the Plaintiff's bodily injuries and damages set forth herein.

## COUNT THREE:  NEGLIGENT UNDERTAKING

47.     Plaintiff incorporates all foregoing paragraphs by reference as if fully set forth herein.

48.     Pleading in the alternative, and without waiving the foregoing, Plaintiff would show that Defendants are liable for negligent undertaking.  As a result of this undertaking, Plaintiff would show that each of the Defendants and/or affiliated companies and/or subsidiaries are liable for negligence pursuant to the Restatement (Second) of Torts §324A having failed to exercise ordinary care in fulfilling their undertaking in a reasonable manner.

49.     Plaintiff would show that §324A provides that "*One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.*"

50.     The Defendants voluntarily undertook control, in whole or part, of responsibilities relating to the inherently dangerous work being conducted at the time and place of the occurrence including decisions and obligations effecting the safety, protection and working conditions for workers preparing, constructing and erecting the sage for the concert in question. As further alleged herein, Defendants breached their legal duties by failing to exercise reasonable and ordinary care in this undertaking by, among other things, failing to perform those services they knew or should have known were necessary for Plaintiff's protection, as well as by failing to approve, budget and/or administer the funds necessary for a safe work environment for all

workers by providing adequate staff, security and medical personnel even though those services were collected by the Live Nations Defendant through the hidden junk fees paid by each ticket purchaser.

51.    Said Defendants further voluntarily undertook to provide proper and adequate forklift equipment, as well as competent, certified, and trained forklift operators which was relied upon by **STAGE CO** and the workers at the site like Plaintiff.

52.    Defendants had the right, ability, and responsibility to control the conduct occurring at AT&T Stadium, knew or had reason to know of the necessity of taking appropriate action to prevent foreseeable harm to Plaintiff, had the opportunity to prevent such foreseeable harm, yet failed to do so.

53.    As further alleged herein, Defendants breached those duties owed to Plaintiff. As a proximate cause of Defendants' breaches of their legal duties, Plaintiff sustained severe and life-altering injuries that will be with him for the rest of his life. Defendants' breaches, acts and omissions were a substantial factor in causing Plaintiffs' severe injuries and resulting damages complained of herein, without which such harm would not have occurred. But for said breaches, Plaintiff would not have sustained severe life-altering injuries.

54.    Plaintiff would show that said Defendants' conduct violated the Restatement (Second) of Torts §324A. Such violations proximately caused the Plaintiff's injuries and damages complained of herein.

55.    Plaintiff further alleges that, at all material times, Defendants were agents, servants, employees, partners, authorized representatives and/or joint venturers of one another and the acts of each Defendant were within the course and scope of the agency, employment,

partnership, and/or joint venture such that Defendants are jointly and severally liable for the damages they collectively caused Plaintiff.

## COUNT FOUR:  NEGLIGENT HIRING

56.    Plaintiff would show that the LIVE NATION DEFENDANTS and their agents and subcontractors, including Defendants WEISS, CP3 and I.D. PRODUCTIONS SERVICES are guilty of the tort of negligent hiring, supervising, training, and/or retaining of workers, contractors and/or employees regarding the forklift operations and requirements specified in the contract. In this regard, said Defendants hired, supervised, trained, and/or retained the individual or individuals, including but not limited to DAIVD WEISE, CASEY CARTER and JOSEPH DAVIES BAIRD, responsible, in whole or part, for ensuring that the work place and site in question on the date of the occurrence was secure, safe for start-up, and that the appropriate crew and competent forklift drivers were present before giving the go ahead to commence work at the time and place of the occurrence. Plaintiff would show that said Defendants should not have allowed the commencement of work at the time and place of the occurrence due to the lack and unavailability of the necessary staff, stagehands, crew, and competent forklift drivers required by Defendants' common law duty of care and the contract Defendants agreed to perform. As a direct and proximate result of the Defendants' negligent hiring, supervision, training, and/or retention of said workers, contractors or employees, Plaintiff suffered the injuries and damages set forth herein.

## COUNT FIVE:  GROSS NEGLIGENCE AND EXEMPLARY DAMAGES

57.    Plaintiff incorporates all foregoing paragraphs by reference as if fully set forth herein.

58.     Defendants' tortious conduct alleged herein was not only negligent, it was grossly negligent. When viewed objectively from Defendants' standpoint, Defendants' actions and omissions involved an extreme degree of risk to Plaintiff and all the other workers at AT&T Stadium. Defendants' actions resulted in a likelihood of serious injury to Plaintiff and others similarly situated.

59.     Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, and welfare of Plaintiff, as well as others similarly situated. Defendants knew about the danger to Plaintiff's safety but engaged in actions that demonstrated their lack of care. Regarding Defendants' gross negligence, it was undertaken by its principals and vice-principals; further, the Defendants approved and ratified the acts and omissions which constitute gross negligence.

60.     As such, Plaintiff hereby seeks and is entitled to recover exemplary damages from Defendants in the maximum amount recoverable under Texas law. With respect to the amount of exemplary damages, Plaintiff will seek discovery and put on evidence concerning the factors set forth in Section 41.011(a)(1)-(6) of the TEX. CIV. PRAC. & REM. CODE.

## **DAMAGES**

61.     Plaintiff would show that as a direct and proximate result of each of the Defendants' negligent and grossly negligent conduct, independently and/or in combination with one another, Plaintiff has been made to suffer the following damages in the past and that, in reasonable probability, will be suffered by Plaintiff in the future:

1)      medical expenses;

2)      physical pain and suffering;

3)      mental anguish and emotional distress;

4)      loss of earning and earning capacity;

5)      physical impairment;

6)      disfigurement;

7)      loss of society and enjoyment of life;

8)      out of pocket expenses;

9)      incidental and consequential damages; and

10)     attorney's fees.

62.     In addition, Plaintiff asserts his claim against the Defendants for punitive and exemplary damages in an amount deemed fair and just by the jury and allowed by Texas law.

## PRE-JUDGMENT AND POST JUDGMENT INTEREST

63.     Plaintiff also asserts a claim for prejudgment and post judgment interest at the maximum rate allowable by law for all elements of damages that such interest is allowed.  Such elements include, but are not limited to, past medical expenses, past physical pain and suffering, past mental anguish, past physical impairment and disfigurement, and any other proper elements of damages that prejudgment interest may be of properly awarded for.

## RULE 193.7 NOTICE

64.     Pursuant to Texas Rule of Civil Procedure 193.7, Plaintiff hereby puts Defendants on notice that Plaintiff intends to use produced documents against Defendants in pretrial proceedings and at trial in accordance with such right and privileges established by Rule 193.7. Accordingly, production of a document in response to Plaintiff's discovery requests authenticates the document(s) for use against Defendants in any pretrial proceeding or at trial unless Defendants object to the authenticity of any produced document(s) within the time limits as set out in Rule 193.7.

## JURY DEMAND

65.     Plaintiff hereby requests a trial by jury and is tendering the required fee for same.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited to appear and answer herein as the law directs, and that upon final hearing hereof, Plaintiff, STEVE GENOVESE, recover of and from the above-named Defendants, jointly and severally, for their damages as alleged in excess of the minimum jurisdictional requirements of this Court and in such amount as the evidence may show proper at the time of trial, together with costs of court, prejudgment interest as allowed by law, and interest at the legal rate from date of judgment until paid, and for such other and further relief, special and general, at law and in equity, to which the Plaintiff may be justly entitled to receive.

Dated: August 21, 2023                          Respectfully submitted,

**PROVOST UMPHREY LAW FIRM, L.L.P.**

*Darren L. Brown*

By:_____
          Darren L. Brown
          Texas Bar #03018350
          dbrown@provostumphrey.com
          350 Pine Street, Ste. 1100
          Beaumont, Texas 77701
          409/838-8881 - 409/813-8630 (Fax)

**CRAWFORD, WISHNEW & LANG PLLC**

By: */s/ Trey Crawford*
Trey Crawford
State Bar No. 24059623
tcrawford@cwl.law
Haleigh Jones
State Bar No. 24097899

---

**PLAINTIFF'S ORIGINAL PETITION**                                                    **PAGE 24**

hjones@cwl.law
1700 Pacific Avenue, Suite 2390
Dallas, Texas 75201
(214) 817-4500

ATTORNEYS FOR PLAINTIFF

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Stephanie Gilbert on behalf of Tom Crawford
Bar No. 24059623
sgilbert@cwl.law
Envelope ID: 78736021
Filing Code Description: Original Petition
Filing Description:
Status as of 8/23/2023 3:37 PM CST

Associated Case Party: STEVE GENOVESE

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Haleigh Jones | | hjones@cwl.law | 8/21/2023 12:27:26 PM | SENT |
| Stephanie Gilbert | | sgilbert@cwl.law | 8/21/2023 12:27:26 PM | SENT |
| Trey Crawford | | tcrawford@cwl.law | 8/21/2023 12:27:26 PM | SENT |